ZEICHNER ELLMAN & KRAUSE LLP
Stuart A. Krause, Esq. (SK-3847)
Bryan D. Leinbach, Esq. (BL-7782)
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396


Attorneys for Toyota Tsusho America, Inc.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DANA CORPORATION, et al.,<br><br>                Debtors. | Bankruptcy<br>Case No.: 06-10354 (BRL)<br><br>Chapter 11<br><br>(Jointly Administered) |
| TOYOTA TSUSHO AMERICA, INC.,<br><br>                Appellant,<br><br>    - against -<br><br>DANA CORPORATION, et al.,<br><br>                Appellee. | Case No.: 07-Civ 04837 (PAC) |


**BRIEF OF APPELLANT,
TOYOTA TSUSHO AMERICA, INC.**


ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

BASIS OF APPELLATE JURISDICTION .........................................................1

ISSUES PRESENTED...........................................................................................2

STANDARD OF REVIEW ....................................................................................2

STATEMENT OF THE CASE ..............................................................................3

    A.    Nature of Case .........................................................................................3

    B.    Course of Proceedings.............................................................................3

    C.    Disposition Below ...................................................................................4

STATEMENT OF FACTS .....................................................................................4

    TAI Reclamation Demand...........................................................................4

    DIP Financing .............................................................................................5

    Reclamation Resolution in the Bankruptcy Proceeding............................8

SUMMARY OF ARGUMENT.............................................................................11

ARGUMENT .........................................................................................................13

I.        BANKRUPTCY COURT ERRED IN HOLDING THAT
        DEBTORS' POST-PETITION PLEDGE OF THEIR
        ASSETS TO THEIR POST-PETITION DIP LENDERS,
        AND THE SATISFACTION OF THE DEBTORS' PRE-
        PETITION SECURED DEBT WITH A PORTION OF THE
        PROCEEDS OF THE DIP LOAN, CONSTITUTED A
        "DISPOSITION" OF THE GOODS THAT WERE
        SUBJECT TO RECLAMATION CLAIMS SO AS TO
        ENTIRELY DEFEAT TAI'S RECLAMATION CLAIM ..........................13

    A.    TAI's Reclamation Claim Is Not Subject To the Prior Rights
        of a Holder of a Security Interest ....................................................13

    B.    The Bankruptcy Court's Dependence on Dairy Mart Is
        Misplaced ...........................................................................................16

JOINDER OF TAI TO ARGUMENTS OF APPELLANT IN RELATED
        APPEAL.................................................................................................20

i

**CONCLUSION** ............................................................................................21

# TABLE OF AUTHORITIES

## Federal Cases

Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.),
   239 B.R. 261 (Bankr. S.D.N.Y. 1999)........................................................ 14

Griffin Retreading Company v. Oliver Rubber Company (Matter of Griffin
   Retreading Company),
   795 F.2d 676 (8th Cir. 1986) ................................................................. 19

In re Bonnanzio,
   91 F.3d 296 (2d Cir. 1996)..................................................................... 2

In re Dairy Mart Convenience Stores, Inc.,
   302 B.R. 128 (Bankr. S.D.N.Y. 2003)............................................ 12, 13, 14

In re Georgetown Steel Company,
   318 B.R. 340 (Bankr. D.S.C. 2004).......................................... 13, 17, 18, 19

In re Hartz Foods, Inc.,
   264 B.R. 33 (Bankr. D. Minn. 2001) ....................................................... 19

In re Phar-Mor, Inc.,
   301 B.R. 482 (Bankr. N.D. Ohio 2003)...................................... 12, 15, 17, 19

In re The Bennett Funding Group, Inc.,
   439 F.3d 155 (2d Cir. 2006)................................................................... 1

Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.),
   964 F.2d 842 (8th Cir. 1992) ................................................................. 17

## Federal Statutes

11 U.S.C. § 105(a)..............................................................................5, 8, 10

11 U.S.C. § 361 ....................................................................................5, 6

11 U.S.C. § 362 .................................................................................5, 6, 8

11 U.S.C. § 363 ....................................................................................5, 6

11 U.S.C. § 364(c)(1)................................................................................5

11 U.S.C. § 364(c)(2)..............................................................................5, 6

11 U.S.C. § 364(c)(3)................................................................................5

11 U.S.C. § 364(d)(1)..............................................................................5, 6

11 U.S.C. § 364(e)...................................................................................5

11 U.S.C. § 503(b)(9)................................................................................5

11 U.S.C. § 507 ................................................................................................ 5

11 U.S.C. § 546(c) ................................................................................ 12, 15, 18

28 U.S.C. § 158(a)(1) ........................................................................................ 1

## **State Statutes**

NY UCC § 2-207 (McKinney 2002) ................................................................ 14

## **Federal Rules**

Fed. R. Bankr. P. 2002 ................................................................................ 5, 6

Fed. R. Bankr. P. 4001 ................................................................................ 5, 6

Fed. R. Bankr. P. 7042 ................................................................................. 10

Fed. R. Bankr. P. 9014 ........................................................................... 5, 6, 10

## BASIS OF APPELLATE JURISDICTION

This is an appeal from an April 26, 2007 order of the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") valuing the appellant, Toyota Tsusho America, Inc.'s ("TAI") reclamation claims against the bankruptcy estates of Dana Corporation and its affiliated entities ("Debtors"), along with all other similarly situated reclamation claimants, at "zero" (the "Order") (Docket No. 5175) (Tab 13). 28 U.S.C. § 158(a)(1) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges . . . ." 28 U.S.C. § 158(a)(1) (2006); see also In re The Bennett Funding Group, Inc., 439 F.3d 155, 159-60 (2d Cir. 2006) ("For appeals 'of right' a district court only has jurisdiction to hear appeals from 'final judgments, order, and decrees.'" 28 U.S.C. § 158(a)(1).).

The Order of the Bankruptcy Court dated April 26, 2007 is an appealable order pursuant to 28 U.S.C. § 158(a)(1), as it is a final judgment of a bankruptcy judge. TAI filed its notice of appeal on May 3, 2007 the "Notice of Appeal" or the "Appeal") (Docket No. 5211) (Tab 14).[1]

---

[1] The docket numbers referenced above refer to the docket numbers assigned to the parties' documents in the underlying bankruptcy proceeding. All of the documents referenced in this appellate brief as well as all documents that were designated on appeal by TAI or Debtor are contained in the accompanying binder labeled "Designated Documents Binder," which has not been electronically filed as it is voluminous. "Tab" numbers refer to this binder.

## ISSUES PRESENTED

TAI submits the following issue on appeal:

1.    Whether the Bankruptcy Court erred, as a matter of law, in holding that the Debtors' post-petition pledge of their assets to their post-petition DIP Lenders, and the satisfaction of the Debtors' pre-petition secured debt with a portion of the proceeds of the DIP Loan, constituted a "disposition" of the goods that were subject to reclamation claims so as to entirely defeat TAI's reclamation claim.

## STANDARD OF REVIEW

No testimony was taken by the Bankruptcy Court and no findings of fact were made to support its holdings.[2]

The standard of review is *de novo*. On an appeal to the district court, "[c]onclusions of law or conclusions of mixed law and fact are reviewed *de novo*." In re Bousa, Inc., 05 Civ. 230 (PKL), 2005 U.S. Dist. LEXIS 11812, at *10 (June 15, 2005); see also Hickox v. Friedland, 98 Civ. 4988 (JGK), 1999 U.S. Dist. LEXIS 16163, at *1 (October 21, 1999) ("[A]ccording to the Court of Appeals, 'the fact findings of the bankruptcy court are reviewed by the district court for clear error, and the conclusions of law are reviewed de novo.'") (quoting In re Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996)). This appeal presents only holdings on conclusions of law arising from Debtors' motions to

---

[2]   As noted in this brief, Debtors and reclamation claimants stipulated to certain facts relating to their arguments on Debtors "Prior Lien Defense" (discussed below).

reconcile all reclamation claims filed against Debtors' bankruptcy estates. Accordingly, this Court must review these rulings *de novo*.

## STATEMENT OF THE CASE

### A.     Nature of Case

The dispute litigated below was whether the Debtors' post-petition pledge of their assets to their post-petition DIP lenders and the satisfaction of Debtors' pre-petition secured debt with the proceeds from those DIP loans constituted a "disposition" of the goods subject to reclamation by TAI so as to render TAI's reclamation claim valueless.

### B.     Course of Proceedings

On March 29, 2006, the Bankruptcy Court entered an Order establishing procedures for the reconciliation of reclamation claims against the Debtors. (Docket No. 724) (Tab 3). TAI filed Reclamation demands upon Debtors by letter dated March 20, 2006. (Docket No. 517) (Tab 1). On June 30, 2006, Debtors filed their reconciliation of all reclamation claims, which valued all reclamation claims at "zero." (Docket No. 1650) (Tab 4). In response, TAI filed an objection to the Debtors' reconciliation of its claims, along with over 100 other reclamation claimants (Docket No. 2848) (Tab 5). After a hearing, the Bankruptcy Court set forth a briefing schedule to address Debtors' reconciliation of the reclamation claims based upon the "Prior Lien Defense" (discussed below) (Docket No. 3865) (Tab 6). Debtors filed their Initial Brief in support of the "Prior Lien Defense" on October 13, 2006. (Docket No. 3939) (Tab 7). After a brief period

where the reclamation claimants engaged in limited discovery of Debtors, TAI filed its

opposition (Docket No. 4642) (Tab 10), and Debtors filed their reply brief.  (Docket No.

4766) (Tab 11).  On or about February 28, 2007, oral argument was held in the Bankruptcy

Court on Debtors' Initial Brief and the reclamation claimants' Oppositions to the Initial

Brief.

### C.    <u>Disposition Below</u>

On April 19, 2007, the Bankruptcy Court issued a Memorandum Decision

(the "Decision"), providing the Bankruptcy Court's reasoning for its April 26, 2007 Order,

which reconciled TAI's reclamation claim, along with all other reclamation claims filed

against the Debtors, at "zero."

### STATEMENT OF FACTS

Debtors filed voluntary petitions under title 11 of the United States Code

(the "Bankruptcy Code") on March 3, 2006 (the "Petition Date").  By an Order entered on

the Petition Date, Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered.  Debtors are authorized to continue to

operate their businesses and manage their properties as debtors in possession, pursuant to

§§ 1107(a) and 1108 of the Bankruptcy Code.

### TAI Reclamation Demand

Prior to the Petition Date, TAI, a New York corporation engaged in the

business of sourcing and supplying steel and various parts and components used in the

manufacture of automobiles, sold goods to Debtors in the ordinary course of its business. Specifically, during the forty-five (45) day period before the Petition Date (the "Reclamation Period"), TAI shipped steel, parts and components (the "Goods"), which Debtors received during the same time period.

By letter dated March 20, 2006, TAI made a formal written demand for reclamation of the Goods pursuant to § 2-702 of the Uniform Commercial Code (the "UCC") and § 546(c) of the Bankruptcy Code, and provided documents supporting the validity of the TAI Reclamation Claim (the "Demand"). The value of the Goods asserted by TAI in the Demand was $9,595,435.57 (the "TAI Reclamation Claim"). TAI also asserted that $3,907,048.74 of the TAI Reclamation Claim constituted the value of Goods received by the Debtor within twenty (20) days of the Petition Date.[3]

On March 22, 2006, TAI filed its Notice of Reclamation Demand with the Bankruptcy Court. (Docket No. 517) (Tab 1).

**DIP Financing**

On March 29, 2006, the Bankruptcy Court entered the Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and

---

[3] Under 11 U.S.C. § 503(b)(9) TAI is entitled to an Administrative Expense Claim for all goods it sold to Debtors within twenty (20) days of the Petition Date (the "TAI Administrative Expense Claim"). The Bankruptcy Court clearly stated in the Decision that the viability of any reclamation claimant's entitlement to an administrative priority claim pursuant to 11 U.S.C. § 503(b)(9) would not be addressed. Decision at 3. (Docket No. 5136) (Tab 12). Indeed, as Debtors' have not objected to the validity of TAI's Administrative Claim, such claim falls outside the scope of this appeal.

Fed. R. Bankr. P. 2002, 4001 and 9014 and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 (the "Final DIP Order"). (Docket No. 721) (Tab 2). The Final DIP Order authorized Debtors to enter into the Senior Secured Superpriority Debtor-in-Possession Credit Agreement (the "Agreement") in order to obtain post-petition financing from various lenders (the "DIP·Lenders").

Pursuant to paragraphs 6(a) & (b) of the Final DIP Order, in exchange for the post-petition financing, the DIP Lenders acquired:

> First Lien on Cash Balances and Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien and senior security interest **as of the date of the Interim Order** in and lien upon all pre-petition and post-petition property of the Debtors...

> Liens Priming Pre-Petition Secured Creditors' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority security interest **as of the date of the Interim Order** in and lien upon all pre-petition and post-petition property of the Debtors...whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Petition Secured Indebtedness. Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Creditors arising from current and future liens of the Pre-Petition Secured Creditors...

Final DIP Order 6. (emphasis added) (Docket No. 721) (Tab2).

However, pursuant to paragraph 30 of the Final DIP Order, the DIP Lenders' liens do not disturb any pre existing reclamation rights. Paragraph 30 states that:

> For the avoidance of doubt, (i) nothing contained in this Final Order or any DIP Loan Document impairs, modifies or otherwise affects the validity, enforceability or priority of any setoff, recoupment or other claim, right or defense (each a "Deduction") of any customer or supplier of any Debtor in respect of any account, account receivable, payment intangible or any other payment obligation of that customer or supplier to any Debtor (each a "Customer or Supplier Obligation"), and (ii) the DIP Liens, the Adequate Protection Liens and the Debtor Liens against any Customer or Supplier Obligation shall each be subject to a Deduction in respect of the applicable Customer or Supplier Obligation to the same extent, if any, that such liens would have been subject to such Deduction under applicable non-bankruptcy law in the absence of this Final Order.

Final DIP Order at ¶ 30 (Docket No. 721) (Tab 2).

Debtors stipulated to being indebted to certain "Pre-Petition Secured Creditors" in the amount of approximately $381 million dollars in paragraph 3 of the Final DIP Order. (Docket No. 721) (Tab 2). The Pre-Petition Secured Creditors' claims were over-secured. Final DIP Order at ¶ 3c. (Docket No. 721) (Tab 2).

In accordance with paragraph 5(a)(iii) of the Final DIP Order, Debtors were obligated to payoff their pre-petition secured indebtedness (the "Pre-Petition Secured Indebtedness") with a portion of the post-petition financing. The pre-petition lenders' security interests in Debtors' property were released. Thus, after the pre-petition lenders'

security interests were released, there were no prior security interests in the goods in which TAI is asserting in its reclamation claim.

## Reclamation Resolution in the Bankruptcy Proceeding

The second Order entered by the Court on March 29, 2006, was the Amended Final Order, Pursuant to Sections 105(a), 362 and 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019(b): (A) Establishing Procedures for Resolving Reclamation Claims Asserted Against the Debtors and (B) Granting Certain Related Relief (the "Reclamation Procedures Order"), establishing certain procedures as the sole and exclusive method for the resolution of reclamation claims against Debtors. (Docket No. 724) (Tab 3).

On April 5, 2006, TAI entered into an Assignment of Claim Agreement ("the Assignment Agreement") with JP Morgan Chase Bank, N.A. ("JP Morgan"), under which TAI assigned its interest in the TAI Reclamation Claim to JP Morgan. Under the Assignment Agreement, TAI agreed to indemnify, defend, and protect JP Morgan from all costs arising from any proceeding seeking to "avoid, disallow, reduce, subordinate, or otherwise affect" the TAI Reclamation Claim. TAI duly filed a Notice of Transfer of Claim with this Court. (Docket No. 826). Pursuant to the Assignment Agreement, at its sole option, JP Morgan has the right to require TAI to retain counsel and to oppose any challenge to the assigned claim. In response to the Reclamation Report (discussed below), JP Morgan has called upon TAI to do so.

On April 24, 2006 and June 2, 2006, Debtors, by their counsel, sent form letters to TAI requesting information in support of the TAI Reclamation Claim (the "Information Letters"). TAI forwarded the Information Letters to JP Morgan and requested that JP Morgan provide Debtors with the information requested therein.

On June 16, 2006, JP Morgan provided Debtors with the information requested in the Information Letters regarding the TAI Reclamation Claim (the "TAI Response").

On June 30, 2006, Debtors filed the Reclamation Report with the Bankruptcy Court. (Docket No. 1650) (Tab 4). In the Reclamation Report, Debtors rejected all reclamation claims, including the TAI Reclamation Claim, because "the existence and satisfaction" of a pre-petition floating lien on the Debtors' inventory allegedly rendered the TAI Reclamation Claim (and all other reclamation claims asserted against Debtors) valueless (the "Prior Lien Defense").[4]

On August 11, 2006, TAI filed its objection to the Reclamation Report, setting forth the factual and legal basis for the validity and enforceability of the TAI Reclamation Claim and disputing the factual and legal basis of the Debtors' Prior Lien Defense. (Docket No. 2848) (Tab 5).

---

[4]  Given the position taken by the Debtors that, for purely legal reasons, each and every reclamation claim in these cases is valueless, the wisdom of the Debtors initiating and effectuating a complicated fact gathering and analysis project prior to resolution of those issues is questionable.

On October 13, 2006, the Bankruptcy Court entered into an Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7042 and 9014: (I) Bifurcating Consideration of Issues Relating to Reclamation Claims; (II) Establishing a Briefing Schedule for Consideration of Certain Common Issues; and (III) Granting Certain Related Relief, which established a briefing schedule for the Prior Lien Defense (the "Bifurcation Order").    (Docket No. 3865) (Tab 6) Pursuant to the Bifurcation Order, Debtors filed their Initial Brief in support of the Prior Lien Defense dated October 13, 2006.  (Docket No. 3939) (Tab 7).

On November 13, 2006 TAI served Debtors with discovery requests pursuant to the Bifurcation Order which sought, among other things, all documents sufficient to show the disposition of the Goods and the disposition of the proceeds of the Goods.  On December 1, 2006, the Debtors filed an omnibus objection to the reclamation claimants' discovery requests, including as Exhibit O the Responses and Objections of Debtors Dana Corporation et al. to the Request of Toyota Tsusho America, Inc., First Request for Production of Documents, which among other objections, refused to provide any information on the disposition of the Goods or the proceeds of the Goods.  (Docket No. 4236) (Tab 8).  After a hearing on December 19, 2006, the Court entered an Order ("Discovery Order") on January 19, 2007 in which Debtors stipulated that none of the inventory sought to be reclaimed was liquidated for the purpose of paying the pre-petition creditors.  Discovery Order at 4.  (Docket No. 4566) (Tab 9).

On January 26, 2007 TAI filed its opposition brief to Debtors' Initial Brief, setting forth the factual and legal basis for the validity and enforceability of the TAI Reclamation Claim and disputing the factual and legal basis of Debtors' Prior Lien Defense. (Docket No. 4642 (Tab 10). On February 16, 2007 Debtors' filed their reply brief in response to the reclamation claimants' oppositions to their Initial Brief and in further support of the Prior Lien Defense. (Docket No. 4766) (Tab 11).

Pursuant to the Bankruptcy Court's October 13, 2006 Order which established a briefing schedule for the Prior Lien Defense, the Bankruptcy Court held oral argument on or about February 28, 2007.

On April 19, 2007, the Bankruptcy Court filed the Decision, ruling that the granting of the DIP Loan effectuated a hypothetical disposition of the inventory that was the subject of the TAI Reclamation Claim, and, as a result, all reclamation claims were rendered valueless. Decision at 19 (Docket No. 5136) (Tab 12). Subsequent to the Decision, the Bankruptcy Court entered the Order dated April 26, 2007. (Docket No. 5175) (Tab 13). TAI timely noted this appeal on May 3, 2007.

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in holding that extension of credit pursuant to the Final DIP Order resulted in a "disposition" of the goods subject to Debtors' pre-petition liens.

As a primary issue, the Bankruptcy Court's holding ignores the plain language of 11 U.S.C. § 546(c), which states that a reclamation claimant's right to reclaim goods is subject only to the prior rights of a secured creditor in those goods. As the only arguable prior security interests were paid in full from a source other than the proceeds of the Goods, and such payment resulted in the termination of the pre-petition secured creditors' liens on the Goods, the TAI Reclamation Claim is no longer subject to any prior rights.

Moreover, the Bankruptcy Court's dependence on the reasoning set forth in In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 133 (Bankr. S.D.N.Y. 2003) for the proposition that the pre-petition liens on the Goods were preserved and passed onto the DIP Lenders is fatally flawed because such legal reasoning is at complete odds with the factual realities involved in Debtors' payment of its pre-petition secured obligations. These factual realities are more accurately addressed by the ruling of the bankruptcy court in In re Phar-Mor, Inc., 301 B.R. 482, 489 (Bankr. N.D. Ohio 2003), where the bankruptcy court held that pre-petition liens are not preserved for post-petition secured lenders where no such provisions exist in the DIP orders.

The Bankruptcy Court erred in rejecting the decision in Phar-Mor, Inc. because the reasoning in this decision supports the changes to reclamation rights under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which expands the protection that was provided to reclamation claims in bankruptcy proceedings.

## ARGUMENT

## I.

## BANKRUPTCY COURT ERRED IN HOLDING THAT DEBTORS' POST-PETITION PLEDGE OF THEIR ASSETS TO THEIR POST-PETITION DIP LENDERS, AND THE SATISFACTION OF THE DEBTORS' PRE-PETITION SECURED DEBT WITH A PORTION OF THE PROCEEDS OF THE DIP LOAN, CONSTITUTED A "DISPOSITION" OF THE GOODS THAT WERE SUBJECT TO RECLAMATION CLAIMS SO AS TO ENTIRELY DEFEAT TAI'S RECLAMATION CLAIM

A.     **TAI's Reclamation Claims Is Not Subject
       To the Prior Rights of a Holder of a Security Interest**

Section 546(c) of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Prior to the passage of BAPCPA, Section 546(c) of the Bankruptcy Code preserved a seller's right of reclamation under state law.  See In re Georgetown Steel Company, 318 B.R. 340, 345 (Bankr. D.S.C. 2004).  Uniform Commercial Code ("UCC") § 2-702 "ordinarily forms the statutory right upon which sellers base[d] their reclamation demands…" under the prior version of Section 546(c) of the Bankruptcy Code.  In re Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 133 (Bankr. S.D.N.Y. 2003). Section 2-702 of the UCC provides in relevant part that:

> (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt… (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article…

13

NY UCC § 2-207 (McKinney 2002).

Section 2-702 of the UCC has been interpreted to permit both pre-petition secured creditors and subsequent good faith purchasers' interests to prime reclamation claims. See e.g. Dairy Mart, 302 B.R. at 133 (courts have treated holders of "prior perfected floating liens on inventory…as purchaser[s] with rights superior to those of a reclaiming seller."); see also Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.), 239 B.R. 261, 267 (Bankr. S.D.N.Y. 1999).

However, the amendments to Section 546(c) significantly strengthened the rights of reclamation claimants. Collier on Bankruptcy para. 546.LH [3] (Lawrence P. King et al. eds., 15th ed. Rev. 2005) ("Section 546(c) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to protect more broadly the rights of reclamation claimants vis-à-vis the trustee's avoiding powers"). Whereas the prior enactment of Section 546(c) of the Bankruptcy Code merely preserved a seller's right of reclamation under state law, Section 546(c) of the Bankruptcy Code creates federal right of reclamation, which accords additional protections unavailable under most states' commercial statutes. See Collier on Bankruptcy ¶ 546.04 fn. 7 (Lawrence P. King et al. eds., 15th ed. Rev. 2005). Section 546(c) now states in relevant part that:

> subject to the **prior rights** of a holder of a security interest in such goods of the proceeds thereof, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received

such goods while insolvent, within 45 days before the date
of the commencement of a case under this title...

11 U.S.C. § 546(c) (emphasis added).

Thus, in accordance with the unambiguous language of Section 546(c) of
the Bankruptcy Code, a reclamation claimant's claim is superior to all other claims and
interests in property except a pre-existing security interest.  No such security interest exists
in this case.

The only creditors who arguably had prior security interests were the Pre-
Petition Secured Creditors whose claims were satisfied by the post-petition financing and
whose rights to collateral were deemed "terminate[d] in full."  Initial Brief at p. 30 and
Exhibit B at p. 16 (Docket No. 3939) (Tab 7); see also Final DIP Order at ¶ 15 (Docket
No. 721) (Tab 2).  Indeed, Debtors stipulated in their responses to the reclamation
creditors' discovery requests that the pre-petition secured claims against debtors property
were paid using the proceeds of the post-petition DIP Loan.  Discovery Order at ¶ 4
(Docket No. 4566) (Tab 9).  C.f. In re Phar-Mor, Inc., 301 B.R. 482, 489 (Bankr. N.D.
Ohio 2003).  As the Pre-Petition Creditors' claims have been fully satisfied from the
proceeds of the DIP Loan, the TAI Reclamation Claim is no longer subject to any prior
security interest.

**B.    The Bankruptcy Court's Dependence on Dairy Mart Is Misplaced**

The Bankruptcy Court relied heavily upon the decision in Dairy Mart, for the proposition that the release of the Pre-Petition Secured Creditors' liens and pledge of the collateral to the DIP Lenders constituted a disposal of the Goods.  In Dairy Mart, the court ruled that the pledge of a pre-petition secured lender's collateral to a post-petition lender constituted a disposal of goods that were otherwise subject to reclamation claims because "the lien was given to the new lender in exchange for payment to…" the pre-petition lender.  Id. at 135.  The court ruled that the creation of the post-petition creditor's lien was part of an integrated transaction in which the pre-petition creditor's claim was satisfied.  Id. at 135-136.

As in Dairy Mart the Bankruptcy Court held that "[B]ecause the reclaimed goods or the proceeds thereof were either liquidated in satisfaction of the Pre-Petition Indebtedness or pledged to the DIP Lenders pursuant to the DIP Facility, the reclaimed goods effectively were disposed as part of the March 2006 repayment of the Pre-Petition Credit Facility."  Decision, at 19 (Docket No. 5136) (Tab 12).  However, the Bankruptcy Court's dependence on the reasoning set forth in Dairy Mart is flawed for several reasons.

First, the Bankruptcy Court's dependence on the reasoning set forth in Dairy Mart is flawed because the Bankruptcy Court focuses on what the DIP Lenders and Debtors **could** have done instead of examining what actually happened in the current case.  Specifically, the Bankruptcy Court opined that the Pre-Petition Lenders *could* have foreclosed on the Reclaimed Goods in order to satisfy their liens.  Decision at p. 19.

(Docket No. 5136) (Tab 12).  However, as courts have held that the rights of reclamation claimants to reclaim goods are determined by debtors' actions (as opposed to hypothetical actions), this Court should be guided by what Debtors actually did. Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.), 964 F.2d 842, 848 (8th Cir. 1992)(recognizing that a secured creditor's decision will determine the value of the seller's right to reclaim in holding that [b]ecause the secured creditors released their superior liens and satisfied their claims from unrelated assets and income sources, the bankruptcy court properly valued [reclamation creditor's] right to reclaim at the full invoice price."); Phar-Mor, Inc., 301 B.R. at 497 ("In the bankruptcy context, the secured creditor's decision determines the value of the seller's right to reclaim."); See also Georgetown Steel Company, 318 B.R. 340 at 347-48.

In the current case, while Debtors may have conveyed an interest in the goods subject to the TAI Reclamation Claim, the Goods themselves remained in Debtors' possession and control instead of being liquidated to pay Debtors' pre-petition secured obligations.  The court in Phar-Mor, Inc. recognized that such actions affect reclamation claimants' rights in an analogous situation:

> On the petition date Pre-Petition Lenders were over-secured.  Under the Interim and Final DIP Orders, Debtors were authorized to, and did in fact, repay all obligations owed to Pre-Petition Lenders.  Upon receipt of these funds any liens granted in favor of Pre-Petition Lenders securing the pre-petition obligations were released.  The Court rejects Debtors' claim that the pre-petition liens were preserved to DIP Lenders. The Interim and Final DIP Orders did not transfer to pre-petition liens that secured the obligations arising under the Pre-Petition Credit Agreement from Pre-Petition Lenders to the lenders under the DIP Facility.  Rather, the Interim and Final DIP Orders gave

17

.

> Debtors the authority to grant DIP Lenders new liens, and gave DIP Lenders a super-priority claim. **Since Pre-Petition Lenders' liens were released, Vendors' right to reclaim is not affected by the interests of Pre-Petition Lenders.**

Id. at 497 (emphasis added).

As in Phar-Mor, Inc., Debtors used the proceeds of the DIP Loan to repay the pre-petition secured creditors. Upon receiving payment, the pre-petition secured creditors' liens on the Goods were deemed "terminate[d] in full," as clearly set forth in Debtors' pre-petition security agreement. Initial Brief at P. 30 and Exhibit B to Initial Brief at p. 16 (Docket No. 3939) (Tab 7). Indeed, by the Debtors' own admission, the Goods were not used to repay the pre-petition creditors. Discovery Order at ¶ 4. (Docket No. 4566) (Tab 9). As a result, TAI's right to reclaim the Goods is preserved.

In addition, the Bankruptcy Court's acceptance of Dairy Mart over Phar-Mor, Inc. is flawed because the Phar-Mor, Inc. result is the better approach under the current statute governing reclamation claims. As discussed above, Congress clearly intended to expand the rights of reclamation in the bankruptcy context. See 11 U.S.C. § 546(c). Because BAPCPA enhanced the protections afforded to reclaiming creditors, the Phar-Mor, Inc. approach (that the granting of post-petition liens to the DIP Lender and the satisfaction of pre-petition liens from the DIP Loan does not constitute the disposition of assets so as to render reclamation claim valueless) is clearly better law. The Bankruptcy Court's decision to engage in a presumption that the Goods were somehow disposed of in satisfaction of the Pre-Petition Liens was inaccurate and particularly inappropriate in this

18

case.  Accordingly, this Court should find that the Bankruptcy Court's decision was in error.

Finally, to the extent that <u>Dairy Mart</u> enables debtors to injure reclamation claimants, <u>Dairy Mart</u> should not be followed.  "No action on the part of a debtor should be permitted to defeat a seller's right to reclamation."  <u>Phar-Mor, Inc.</u>, 301 B.R. at 497; <u>See also</u> <u>Griffin Retreading Company v. Oliver Rubber Company (Matter of Griffin Retreading Company)</u>, 795 F.2d 676, 679 (8th Cir. 1986); <u>In re Hartz Foods, Inc.</u>, 264 B.R. 33, 38 (Bankr. D. Minn. 2001); <u>Georgetown Steel Company</u>, 318 B.R. at 348 (The court denied the debtor's motion to reclassify reclamation claims as general unsecured claims when "it appear[ed] that the actions of the Debtor discouraged, if not foreclosed, the Reclamation Creditors from seeking a tracing, or segregation, of their goods...[and] the "Reclamation Creditors had been assured that they were entitled to administrative claims...and had been further enjoined by the Reclamation Order, as requested by the Debtor, from pursuing their rights.").

Here, Debtors successfully moved the Court to establish specific procedures for handling reclamation claims.  Part of the procedure required the reclamation claimants to provide detailed information regarding their claims.  Debtors lulled the reclamation claimants into believing that their claims would be determined individually based upon the information provided by the claimants.  Moreover, Debtors waited until <u>after</u> the expiration of the deadline to object to the Final Order to serve their reclamation report upon the reclamation creditors.  Thus, as was the case in <u>Georgetown</u>

<u>Steel Company</u>, Debtors' actions discouraged the reclamation claimants from pursuing their rights.

## JOINDER OF TAI TO ARGUMENTS
## <u>OF APPELLANT IN RELATED APPEAL</u>

In order to avoid making otherwise duplicative arguments in its Appellate Brief, TAI hereby, joins in the arguments of appellant Hydro Aluminum Precision Tubing North America, L.L.C., a reclamation claimant appealing the same April 26, 2007 Order of the Bankruptcy Court, set forth in its Brief, which was filed in a related case entitled <u>Hydro Aluminum Precision Tubing North America, L.L.C.</u> v. Dana Corporation, et al., Index No. 07 Civ. 5460 (PAC) (Docket No. 3).

## CONCLUSION

Based upon the foregoing, TAI respectfully requests that this Court (i) reverse the ruling of the Bankruptcy Court which granted judgment in favor of Debtors based upon the Prior Lien Defense and, if applicable, (ii) remand any remaining controversy arising from this appeal to the Bankruptcy Court.

Dated:     New York, New York
           August 31, 2007

Respectfully submitted,

ZEICHNER ELLMAN & KRAUSE LLP


By:    / s /   Stuart A. Krause
       Stuart A. Krause, Esq.
       Bryan D. Leinbach, Esq.
       Attorney for Toyota Tsusho America, Inc.
       575 Lexington Avenue
       New York, New York 10022
       (212) 223-0400

STATE OF NEW YORK,                                    CERTIFICATE OF SERVICE
COUNTY OF NEW YORK.

     Michael W. Antonivich, certifies pursuant to 28 U.S.C 1746 under penalty of perjury, that on the 31st day of August, 2007, I served a true copy of the within **BRIEF OF APPELLANT, TOYOTA TSUSHO AMERICA, INC. AND DESIGNATED DOCUMENTS BINDER** upon the attorneys hereinafter named at the places hereinafter stated by hand delivering the same to the offices of said attorneys at their last known addresses given below:

> Corinne Ball, Esq.
> Richard H. Engman, Esq.
> JONES DAY
> 222 East 41st Street
> New York, New York  10017
>
>
> Beth E. Levine, Esq.
> Dean A. Ziehl, Esq.
> Robert J. Feinstein, Esq.
> Debra I. Grassgreen, Esq.
> PACHULSKI STANG ZIEHL YOUNG
>   JONES & WEINTRAUB LLP
> 780 Third Avenue, 36th Floor
> New York, New York  10017-2024

Dated: August 31, 2007

                                      MICHAEL W. ANTONIVICH

510176.01/2209-050/MWA